[Civ. No. 5167. First Appellate District, Division One.—April 13, 1925.]

FRANK CURRAN, Petitioner, v. THE SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE COUNTY OF FRESNO et al., Respondents.

[1] Contempt—Citation for—Time—Jurisdiction.—A trial court did not lose its jurisdiction to cite an attorney for an alleged contempt, which was supposed to have occurred during the trial of a criminal case, by citing him several days after the trial was finished, where the action of the court on the alleged contempt, which occurred in the immediate presence and view of the court, was delayed only by the situation created by the pendency of the trial (which was concluded about six days after the contempt occurred), and a proper consideration of the possible prejudicial effect on the jury of a further reference to the matter during the trial.

[2] Id.—Occurrence of Alleged Contempt in Presence of Court—Order to Show Cause—Affidavits.—The order to show cause why the attorney should not be adjudged guilty of contempt,

being based on facts within the immediate knowledge of the court, needed no affidavit to support it.

[3] ID.—ORDER ADJUDGING ATTORNEY GUILTY OF CONTEMPT—CERTIO-RARI—EVIDENCE.—In this proceeding in *certiorari* to annul an or-der adjudging an attorney guilty of contempt, all the facts on which the court proceeded to judgment are set forth in the order, together with other statements which the petitioner contends are conclusions not supported by facts shown by the record.

[4] ID.—REMARK OF TRIAL JUDGE—EXCEPTION BY ATTORNEY.—In such proceeding, the attorney, who was cross-examining a witness, was within his legal right and duty in taking exception to and assign-ing as error the remark of the trial judge that "it is entirely unbecoming an attorney to use that language to the witness," made upon the objection of the district attorney to the use of the word "guess" in the questions asked by the attorney, where the questions addressed by the attorney to the witness were proper on cross-examination, were in no sense insulting or degrading, and the replies elicited directly tended to lessen the weight of the previous testimony of the witness, and there was nothing in the record showing that the physical attitude or acts of the attorney up to the time when the district attorney interposed his objection were in any way offensive to the court, and the attorney took ex-ception to the remark of the judge in the following language: "I take an exception to your honor's remarks and assign them as error."

[5] ID.—ORDER REQUIRING ATTORNEY TO CONDUCT EXAMINATION WHILE SEATED—EXCESS OF AUTHORITY.—In such proceeding, the order of the trial court requiring the attorney to seat himself and conduct the cross-examination of the witness from that position was in excess of its proper authority, where such order was not made necessary or proper by any preceding act or misconduct on the part of the attorney.

[6] ID.—POSITION OF ATTORNEY BETWEEN COURT AND JURY—FINDINGS. In such proceeding, the facts contained in a finding that the attorney "continued for a period of twenty minutes to stand and walk in a position directly between the position of the court and the jury" after the attorney was ordered to be seated and conduct the examination of the witness while seated, did not legally con-stitute contempt of court, where the court found simply that the fact of the doing of the acts was disorderly, contemptuous, and insulting to the court, without finding the manner in which the acts were done was disorderly, contemptuous, or insulting, and where no presumptions or intendments can be indulged against the attorney, and where, also, it is a matter of common knowledge that the examination of a witness often requires the near approach of counsel, and that such examination necessitates movement be-

tween the desk of counsel and the witness-stand in the conduct of trials.

[7] ID.—PRESENTATION OF POINTS—PERSISTENCE AND VEHEMENCE OF ATTORNEY.—If in discharging his duty an attorney happens to be persistent or vehement, or both, in the presentation of his points, he is nevertheless within his legitimate rights as an attorney so long as his language is not offensive or in contravention of the common rules of decorum and propriety.

(1) 13 C. J., p. 79, n. 21.   (2) 13 C. J., p. 63, n. 68.   (3) 13 C. J., p. 81, n. 53.   (4) 13 C. J., p. 29, n. 26.   (5) 13 C. J., p. 9, n. 66. (6) 13 C. J., p. 29, n. 23, p. 77, n. 92; 23 C. J., p. 108, n. 80. (7) 13 C. J., p. 29, n. 26.

PROCEEDING in Certiorari to annul an order and judgment of the Superior Court of Fresno County adjudging an attorney guilty of contempt. Denver S. Church, Judge. Order and judgment annulled.

The facts are stated in the opinion of the court.

Richard K. Stewart, F. E. Cook, B. M. Benson, Frank Curran, *in pro. per.*, and Frank J. Blake for Petitioner.

G. R. Lovejoy, District Attorney, and C. M. Ozias, Deputy District Attorney, for Respondents.

CASHIN, J.—Petitioner was by the Superior Court of Fresno County adjudged guilty of contempt of court and ordered to be punished by the payment of a fine in the sum of one hundred dollars and imprisonment in the county jail of that county for the period of one day. Petitioner contends that the court by said adjudication and order exceeded its jurisdiction, and in this proceeding asks this court to review and annul the action of the Superior Court.

The alleged contempt occurred on February 19, 1925, during the trial of the case of *People* v. *Griffin,* a criminal action, in which defendant Griffin was charged with a felony, and was represented by petitioner as counsel.

The record shows that during the cross-examination by petitioner of a witness for the prosecution certain questions were asked by him, certain answers given by the witness, and that certain proceedings were had by the court, which were as follows:

"Q. Now, after you went on this dirt road where did you go? A. Went back to the store. Q. Now, wait a minute. You say you went on this dirt road a mile and a half? A. Yes. Q. That is another one of your guesses, isn't it? A. I don't understand you. Q. That is another one of your guesses, isn't it? A. Well, I know the county pretty well. Q. I mean, as to distance? A. It would have to be approximately. Q. It might have been more? A. It might have been a little bit more or a little bit less. Q. You have no way of fixing that at all? A. Not without actually measuring it. Q. You didn't actually measure it? A. No. Q. After you were on the dirt road, where did you go? A. I came back on to the pavement in the city of Clovis. Q. How far was that from the dirt road when you struck the—rather, how far was it from the city when you struck that pavement that leads into Clovis? A. The streets are paved on Fifth Street two blocks east of the railroad track, across the railroad track it is not paved, and we strike the pavement again in the city proper. Q. How far was it from the city of Clovis that you came on the paved highway that you speak about? A. It was within the city limits. Q. It was within the city limits? A. Yes. Q. All right. How long were you with Mr. Whiton? A. About fifteen or twenty minutes, perhaps. Q. About fifteen or twenty minutes? A. Yes. Q. Is that a guess? A. That is a guess, yes. Q. Now, whereabouts was it that you met this car that you speak of? A. It was on what we call the Flume road. Q. It was on what you call the Flume road? A. Yes. Q. Is that a paved road? A. No. Q. Was it the Flume road that I asked you about, the name of that dirt road, that you said you didn't know? A. No, sir. Q. You were on some other road besides the highway and the dirt road? A. I have given you the four roads that I was on. Q. What was that third road that you were on, then? A. The third road, the third turn we made, brought us on to the Flume road. Q. How far did you travel on that? A. About a mile and a half to a mile and three-quarters, approximately. Q. That is another one of your guesses, isn't it? A. Yes. Q. All right. How far had you been traveling on that Flume road before you came by this car? A. Approximately half a mile? Q. That is another guess? A. Yes. Mr. Lovejoy: If the Court please, I object to that kind of language to the witness, 'That is

another guess.' The Court: It is entirely unbecoming to an attorney to use that language to a witness. Mr. Curran: I take exception to your honor's remarks and assign them as error. The Court: You sit down in that chair while you are questioning the witness. Mr. Curran: I have a perfect right to stand up, and I assign your honor's remarks as error, and prejudicial to this defendant. The Court: Will you sit down? Mr. Curran: The supreme court has said that I have a perfect right to stand up, and I will not sit down. I will conduct this cross-examination on my feet, as is customary. The Court: After the court is adjourned this evening you remain in court. Mr. Curran: All right. Q. Now, what was the last question before I was interrupted?''

At the time of adjournment the court by order continued further consideration of the matter until the conclusion of the trial of the criminal case. This trial terminated on February 25, 1925. Petitioner had withdrawn from the case on the day the incident described occurred, and during the further proceedings in the trial was not present in court. Defendant Griffin was found guilty by verdict of the jury, and on February 28, 1925, the judgment of the court in that case was pronounced, Thereafter on the second day of March, 1925, the court made its order, directing that a citation—which was not supported by affidavit—be issued, requiring petitioner to appear before the court on March 6, 1925, ''to show cause why he should not be punished for contempt of court for contemptuous and offensive conduct in open court and in the presence of the court while engaged in the cross-examination of Henry F. Good on the 19th day of February, 1925.'' On March 6, 1925, the matter was regularly continued to March 7, 1925, when petitioner appeared, and, after a hearing, the court made its order in writing, the material part of which, after reciting the facts and the portion of the stenographic report of the examination of the witness Good hereinbefore set forth, was as follows: ''From said statements so made by you at that time in open court and to the court, the court finds that the said statements above outlined were disorderly, contemptuous and insolent to the Court on your part; that the same were made during the sitting of this court and in the immediate presence and view of the court, and directly tended to interrupt the proceed-

ings of said court and to impair the respect due to the authority of said court. The court further finds that said statements addressed to the court were spoken in a very loud, combative and antagonistic tone of voice, and that by reason of said statements so made and expressed by you the court finds that said attitude and intonations and loud expressions by you were disorderly, contemptuous and insulting to the Court, and were made during the sitting of this court and in the immediate presence and view of this court, and directly tended to interrupt its proceedings and to impair the respect due to its authority. And the Court further finds that at said time, notwithstanding the Court ordered you to sit down and proceed with the cross-examination of said witness, that you not only refused to do so, as mentioned above, but that you did not obey the order of the court in that respect but continued for a period of twenty minutes to remain on your feet and to stand and walk in a position directly between the position of the court and the jury; that said conduct was disorderly, contemptuous and insulting to the Court and committed during the sitting of this Court and in the immediate view and presence of the Court, and that the same directly tended to interrupt its proceedings and to impair the respect due to its authority.'' Upon these findings the court adjudged petitioner to be guilty of contempt of court, and imposed the punishment mentioned, which judgment was entered in the minutes of the court.

Petitioner thereupon filed in this court his petition for a writ of review, which was granted, made returnable on March 25, 1925, and the execution of the judgment of the Superior Court stayed pending the decision of this court.

Several objections are made by petitioner to the sufficiency of the proceedings leading to the judgment. It is contended by petitioner that the court, by failing to act at the time when the alleged contempt occurred and to then adjudge petitioner to be in contempt, lost jurisdiction to proceed summarily against petitioner, and that any subsequent proceedings based on an occurrence in the immediate view and presence of the court must be founded upon an affidavit filed and an order to show cause or attachment issued.

No affidavit was filed in this case, but the matter was regularly continued to the close of the trial, and the court two

days thereafter caused to be issued and served the citation mentioned above.

[1] The occurrence on which the contempt proceeding was based was in the immediate view and presence of the court. The action of the court thereon, as shown by the record, was delayed only by the situation created by the pendency of the trial mentioned above and a proper consideration of the possible prejudicial effect on the jury of a further reference to the matter during the trial. The action of the court thereafter was timely. [2] The order to show cause was based on facts within the immediate knowledge of the court, and needed no affidavit to support it, and the court, as to the form and manner of its procedure, retained jurisdiction to act (*Lamberson* v. *Superior Court,* 151 Cal. 458 [11 L. R. A. (N. S.) 619, 91 Pac. 100]).

[3] Petitioner also contends that the order of the court does not recite the facts on which petitioner is thereby adjudged guilty of contempt of court (sec. 1211, Code Civ. Proc.). The order, the material portions of which are set forth in this opinion, contains the questions asked by petitioner of the witness, the objections by the district attorney, the remarks and orders of the court, the replies, objections and assignments of error by petitioner in full, and also the finding by the trial court therein that the "statements addressed to the court (by petitioner) were spoken in a very loud, combative and antagonistic tone of voice"—"that said attitude and intonations and loud expressions by you were disorderly, contemptuous and insulting to the court"—"that at said time, notwithstanding the court ordered you to sit down and proceed with the cross-examination of said witness, you did not obey the order of the court in that respect but continued for a period of 20 minutes to remain on your feet and stand and walk in a position directly between the court and the jury; that said conduct was disorderly, contemptuous and insulting to the court."

It thus appears that all the facts on which the court proceeded to judgment are set forth in the order, together with other statements which petitioner contends are conclusions not supported by facts shown by the record.

Petitioner further contends that a consideration of the whole record shows that his acts which are made the basis of the contempt proceedings do not constitute contempt.

[4] It is clear from a reading of the record that the questions addressed by petitioner to the witness were proper on cross-examination, were in no sense insulting or degrading, and the replies elicited directly tended to lessen the weight of the previous testimony of the witness. Nothing in the record shows that the physical attitude or acts of the petitioner up to the time when the district attorney interposed an objection to the use of the word "guess" in the questions by petitioner were in any way offensive to the court. Upon the objection, however, the court remarked to petitioner that "it is entirely unbecoming an attorney to use that language to the witness," upon which petitioner took an exception to the remark or ruling of the court in the following language: "I take an exception to your honor's remarks and assign them as error."

In so doing petitioner was entirely within his legal right and duty. It was necessary and proper for him to except to and assign as error any remark of the court which in his opinion tended to prejudice him or his client in the minds of the jurors; and we cannot say from the record that the exception was frivolous. The language used by petitioner was not in itself insulting, but was brief and directly to the point.

Then followed immediately an order by the court directed to petitioner, requiring him to be seated and conduct the further cross-examination of the witness from his chair. This order the petitioner refused to obey, as shown by the portion of the record hereinbefore set forth.

[5] No reason appears from the record for the order of the court requiring the petitioner to be seated and to conduct the examination in that posture. It has always been assumed that the orderly conduct of a trial permits, if not requires, counsel in presenting his case, whether directly to the court or jury, or indirectly to them through the examination of witnesses, to stand, if only as a mark of respect; indeed, the effective cross-examination of witnesses has been shown by experience to require that he do so; and we think that in the premises the order of the court was unconsciously in excess of its proper authority; that it was due to a momentary forgetfulness of the rights of the petitioner as an officer of the court in the discharge of his duty to his client and the public, and was not made necessary or

proper by any preceding act or misconduct on the part of petitioner.

The California cases of *In re Shortridge*, 5 Cal. App. 371 [90 Pac. 478], and *Platnauer* v. *Superior Court of Sacramento*, 32 Cal. App. 463 [163 Pac. 237], present situations similar in fact to the case at bar. In each of these cases the petitioner had not prior to the order of the court that he be seated been guilty of any act, nor had any situation arisen at the trial, that made the order necessary or proper in the orderly conduct of the proceedings. The conclusions of the trial court in these cases that the conduct of petitioners was boisterous and offensive was held by the appellate court to mean no more than that petitioners persisted in addressing the court in violation of its order; that the refusal was justified by the facts, and that petitioners were not guilty of contempt of court.

The only remaining questions are whether the findings of the court, first, that after the order made by the court that petitioner be seated and conduct the examination of the witness while seated, petitioner "continued for a period of twenty minutes to stand and walk in a position directly between the position of the court and the jury," and, second, that the statements of the petitioner to the court "were spoken in a loud, combative and antagonistic tone of voice," are findings of fact which, in view of all the facts shown by the record, will support the judgment.

We find from the record that the language used by the petitioner in his objections and assignments of error was altogether proper; his refusal to be seated and to conduct in that position the further examination of the witness, in the absence of other conduct making the order legally justifiable, were not facts upon which alone the court had jurisdiction to adjudge him guilty of contempt. That petitioner, in the further conduct of the examination, stood and walked between the court and the jury, might be a sufficient fact on which to predicate the judgment in this case were it not also the fact that the witness under examination was seated between the court and the jury. [6] That the examination of a witness often requires the near approach of counsel, and that such examination necessitates movement between the desk of counsel and the witness-stand in the conduct of trials, are matters of common knowledge and of which this court takes notice without proof. This, in connection with

the rule that no presumptions or intendments can be indulged against petitioner, and that the court in its order does not find that the manner in which the acts were done was disorderly, contemptuous, or insulting to the court, but simply the fact that the doing of the acts was so, leads us to the conclusion that the facts found in this connection do not legally constitute contempt of court.

[7] The second finding, namely, that the remarks addressed by the petitioner to the court were spoken in a loud, combative, and contentious tone of voice, and that such loud expressions and intonations were disorderly, contemptuous and insulting to the court, can refer only to the statements heretofore shown in the order and taken down by the shorthand reporter at the time. As the court said in the case of *Platnauer* v. *Superior Court, supra,* page 475 [163 Pac. 242]: "If in discharging his duty he (counsel) happens to be persistent or vehement or both in the presentation of his points, he is nevertheless within his legitimate rights as an attorney so long as his language is not offensive or in contravention of the common rules of decorum and propriety." While the courts in other jurisdictions have held that the tone of voice and attitude of counsel in making on proper occasions proper statements to the court may constitute contempt, yet we are reluctant to extend the rule farther than was done in the Platnauer and Shortridge cases, *supra,* and hold that the occasion and the language being proper the intonations of the voice, the vehemence of the objections or the physical attitude of counsel in making them, would alone support the conclusion of the judge that such behavior was disorderly, contemptuous, or insolent toward the court and tended to interrupt the due course of the trial, and thus subject the offender to a judgment of fine and imprisonment. The relations between court and counsel may and often do during the course of a trial become strained; mutual conditions of irritation may be created in the heat of debate, leading to tones and demeanor which in other situations would clearly manifest contempt but which, under the conditions often existing in a hotly contested criminal case, such as is indicated by the record here, should lead to no such conclusion. Much must be pardoned under the circumstances to the infirmities of human nature, and as much excused by the liberty of speech if in the heat of a trial the

expressions of counsel are not always coldly precise, or his tones unmarked by excitement or even anger.

We are of the opinion that the facts on which the court acted in adjudging petitioner guilty do not, all the evidence considered, constitute contempt of court; from which it follows that the order and judgment were beyond the jurisdiction of the court and, therefore, void; and that the judgment must be annulled and vacated. It is so ordered.

Tyler, P. J., and Knight, J., concurred.