[Civ. No. 9511. Second Appellate District, Division One.—August 16, 1934.]

A. BRIGHAM ROSE, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

A. Brigham Rose, *in pro. per.*, for Petitioner.

Everett W. Mattoon, County Counsel, and J. F. Moroney, Deputy County Counsel, for Respondents.

THE COURT.—By allegations contained in his petition for a writ of *certiorari* herein, it appears that in the course

of the trial of an action that was pending before the respondent superior court, on each of three separate occasions petitioner was adjudged guilty of contempt of said court, and was sentenced to pay a fine of $500 and to serve a term of five days in the county jail. However, as to the second offense, later the fine was ordered remitted and the jail sentence was ordered to be served concurrently with that imposed by the adjudication which related to the first offense.

The specifications of the first misconduct of petitioner which resulted in the order by which he was adjudged guilty of contempt are stated in said order as follows:

"During the impanelment of the jury and while prospective jurors in the box were being questioned as to their qualifications to serve as trial jurors, the court made a statement to the jurors in the box as to the charge involved, to-wit, manslaughter, and the defendant's plea thereto, directing all jurors in the courtroom to listen carefully to said statement and to such questions as might be asked of the prospective jurors in the box by the court or by counsel and to note the answers to such questions in order that they might determine individually whether or not their answers would be the same as those given by the jurors in the box.

"The court then asked a number of questions of the jurors in the box, whereupon the said Rose proceeded to examine said jurors. During said Rose's examination, he repeatedly asked questions of jurors, which questions had already been asked and answered, although directed by the court to refrain from repeating the same questions that had been asked and answered, and particularly while questioning Mr. Danley, a prospective juror, said Rose asked him a question as to his belief in the honesty of Chinamen, which question had already been asked and answered by all of the jurors in the box, including said Danley. The court then called Mr. Rose's attention to the fact that said question had been asked and answered. Mr. Rose proceeded in an exceeding loud and aggressive tone of voice and with a sneer upon his face, and contrary to the direct instructions of the court, to ask the same question. The court again directed him to refrain from repeating questions that had already been asked. Mr. Rose persisted in arguing with

the court and to repeat the questions already asked and answered despite the admonition of the court that he refrain from so doing. Mr. Rose then in a loud and aggressive tone of voice and in a belligerent manner and with a sneering and contemptuous expression of the face stated that the court's ruling was 'unusual'. All of Mr. Rose's statements and arguments were made in an aggressively loud tone of voice and in a sneering manner, calculated, in the opinion of the court, to bring the court into contempt.''

The foundational facts for the second order or judgment of contempt and the commitment of the petitioner are stated therein in the following language:

''Thereupon the impanelment of the jury proceeded and certain questions were asked of the jurors in the box, which all of them answered in the affirmative. Mr. Rose then proceeded to ask the same questions of individual jurors. He was then directed by the court to refrain from repeating questions which had already been asked and answered; whereupon in a loud, insolent and aggressive tone of voice, and with a sneering and contemptuous expression on his face, Mr. Rose said, 'Will your Honor permit me to examine this juror?' The court then stated, 'You heard the court's ruling.' Mr. Rose then proceeded to again repeat the same questions that had already been asked and answered. He was again directed by the court to refrain from so doing, and in a loud, insolent and aggressive tone of voice and with a contemptuous and sneering expression, said, 'I demand a mistrial on the ground that your Honor has already prejudiced this jury by not permitting me to examine this panel as to their qualifications to act as jurors.' The court then directed the jury to disregard any remarks of the court addressed to counsel, admonishing them that the defendant and not his counsel was on trial. Mr. Rose, in a loud, aggressive and boisterous tone of voice and with a sneering and contemptuous expression of the face, yelled 'I demand an apology for that.' Whereupon Mrs. Aumaier, one of the prospective jurors in the box, asked to be excused, stating that she felt that the attitude of Mr. Rose was very rude and that he had conducted himself in such an ungentlemanly way that she felt she would be prejudiced against the client he was representing and could not be fair to him; whereupon Mr. Rose again demanded a new

trial, in the same voice and manner as hereinbefore stated, which motion the court denied, and because of Mr. Rose's disorderly, contemptuous and insolent behavier and his refusal to obey the admonitions of the court, all done and committed within the immediate view of the court and jury, tending to interrupt the proceedings and to impair the respect for the court's authority, the court adjudged him guilty of contempt of court. . . . ''

That part of the third order or judgment of contempt of the petitioner and his commitment therefor that is here in question is as follows:

''During the cross-examination of witnesses for the People the said Rose repeatedly approached close to the witness and shouted his questions in a loud and belligerent tone of voice, although admonished by the court to refrain from so doing and to remain at or behind the counsel table unless when showing the witness a document or proceeding with illustrations at the blackboard. He also insisted in attempting to argue with the court after rulings had been made, sustaining or overruling objections.

''During the examination of the witness Sam Ho, a Chinese boy, eighteen years of age, the said Rose insisted in using loud and belligerent tone of voice and a threatening demeanor towards said witness, and on being admonished by the court to refrain from browbeating said witness, he commented upon the court's ruling and admonition in a loud, aggressive and contemptuous tone of voice in a sneering manner. Throughout the entire cross-examination of the witnesses Mr. Rose's tone of voice was loud and aggressive, and his manner and facial expression were sneering and contemptuous.

''Wherefore, the court adjudged the said Rose guilty of contempt of court for disorderly, contemptuous and insolent behavior and for refusal to obey the admonitions of the court, all of which was committed in the immediate view of the court and jury, tending to interrupt the proceedings and to impair the respect for the court's authority; . . . ''

Although petitioner has outlined many of the legal principles relative to the validity of an order that may be made by a trial court in a contempt proceeding, in the instant matter the real test is whether in its essence a sufficient statement of the facts before the court, and in reliance upon

which it acted, has been made in the order in question to confer jurisdiction upon such court. And in the determination of the issue thus suggested it is necessary to consider, not whether each and all of such foundational facts is or are safely and securely grounded, but rather only whether in itself one essential ''cause of action'' is sufficiently stated. In that connection, the attack made by petitioner upon the order or orders is limited. He does not question the general powers of the court in the premises; but confines his objections to the legality of the order or orders, either to the underlying facts which assumedly gave rise thereto, or to the manner in which such facts are stated within such order or orders. That is to say, he asserts that, considering the ''cold'' record of the proceedings, nothing therein contained as delineated by the language employed by petitioner, or his conduct, attitude or demeanor with reference to the situation before the court, would indicate a legal justification for an adjudication of contempt; and, in addition thereto, that even assuming the possibility of just cause for the ultimate action of the court of which complaint is made, the manner of the statement of such ground within such order or orders constitutes but a conclusion of law, and as such is lacking in legal requirements as a foundation for a valid commitment. ■ Thus narrowed, it becomes obvious that if within the questioned order or orders a single unexceptionable ground therefor may be discovered, the jurisdiction of the trial court in making such order necessarily becomes or is invulnerable.

■ In that regard, an inspection of the several orders which are the subject of criticism reveals the condition, common to all, that when addressing the court, in substance the dereliction on the part of petitioner consisted in his obnoxious manner of speech and in his displeasing, irritating and withal, the personally offensive, expression of his countenance. Specifically, a reference to the several orders in question will disclose that as to the first of them it is charged that in a ''loud and aggressive tone of voice and in a belligerent manner and with a sneering and contemptuous expression of the face'', petitioner stated the court's ruling was ''unusual''; that in the second of such orders it is alleged that (a) ''in a loud, insolent and aggressive tone of voice, and with a contemptuous and sneering ex-

pression", petitioner said, "I demand a mistrial," etc.; (b), that "in a loud and aggressive and boisterous tone of voice and with a sneering and contemptuous expression of the face", petitioner yelled, "I demand an apology" (from the court); and in the third of such orders it is again asserted that petitioner "insisted in using loud and belligerent tone of voice and a threatening demeanor towards said witness; and on being admonished by the court to refrain from browbeating said witness, he commented upon the court's ruling and admonition in a loud, aggressive and contemptuous tone of voice in a sneering manner".

As to each of such specifications of misconduct, the conclusion of the trial court was that its obvious effect was (1), "to bring the court into contempt"; or (2), that it tended "to interrupt the proceedings and to impair the respect for the court's authority".

Regarding the sufficiency of such allegations, at the outset it should be remembered that in this proceeding the province of this tribunal is limited to a determination of whether the order or orders under consideration were made by the trial court acting within its jurisdiction. In other words, and as in part is stated negatively, it is not, the underlying facts considered, whether or not either this court or any other court should have found the petitioner guilty of contempt; but rather is, was the trial court legally authorized to do so?

Without meaning to indicate a conclusion relative either to the proper or to the sole source of power residing in a court with reference to its authority to adjudge in the matter of contempt of its proceedings, it should be noted that in specific instances at least statutory power is conferred upon the court in that regard. For example, by the provisions of subdivision 3 of section 128 of the Code of Civil Procedure, every court is given power "to provide for the orderly conduct of proceedings before it"; and (subd. 5) "to control . . . the conduct . . . of all other persons in any manner connected with a judicial proceeding before it, in every matter appertaining thereto; . . . " And by the express terms of section 1209 of the same code, "the following acts or omissions in respect to a court of justice, or proceedings therein, are contempts of the authority of the court:

"1. Disorderly, contemptuous, or insolent behavior toward the judge while holding the court, tending to interrupt the due course of a trial or other judicial proceeding;

"2. . . . boisterous conduct, or violent disturbance, tending to interrupt the due course of a trial or other judicial proceeding; . . . "

So much for obvious, applicable, statutory authority relating to the general situation presented by the record herein. But in addition thereto, by direct adjudication by appellate courts and those of last resort, both in this state and elsewhere, has the question here at issue received attention, with the result that, in practically identical conditions with those here present, the exercise of the power by the trial court has been approved and affirmed not only as to the power and the authority of the court in general, but as well with reference to a designation or specification of objectionable attitude, conduct or demeanor on the part of the contemnor in language, if not identical with that employed by the trial court herein, at least analogous thereto.

In the case entitled *In re Hallinan,* 126 Cal. App. 121 [14 Pac. (2d) 797], in substance it was held (syllabi):

"In said action where the tone of voice of the attorney for the defendant, in refusing to cease to continually interrupt the argument of the district attorney for the purpose of objecting thereto, was extremely and unduly loud, boisterous, harsh, offensive and contemptuous, his conduct was disorderly and contemptuous and his attitude and behavior toward the court while holding said session was insolent, all of which tended to and did interrupt the due course of the trial which was then and there in progress, and said conduct was boisterous and did breach the peace of said judicial proceedings and create a violent disturbance, thereby interrupting the due course of the trial, and the trial court so found in its judgment of contempt, the manner in which said attorney conducted himself brought him clearly within the operation of the provisions of section 1209 of the Code of Civil Procedure, and subjected him to punishment for contempt.

"A contempt may be shown either by language or behavior, and although the language itself may not be contemptuous it may become so if uttered in an insolent or defiant manner; and in determining whether the language

used was a contempt, regard must be had not only to the very words used but to the surrounding circumstances, the connection in which they were used, the tone, the look, the manner and the emphasis.

"Where the contempt consists, not in the use of language which in itself is offensive, but in the contemptuous tone of voice in which it was spoken, accompanied by disorderly behavior, and the court, in describing the volume, tone, accent and inflection of the contemnor's voice and manner of speech, finds that it was extremely and unduly loud, boisterous, harsh, offensive and contemptuous and, in describing his attitude and behavior toward the court, finds that it was insolent, contemptuous, boisterous and disorderly to the extent of creating a disturbance and breach of the peace, all of which interrupted and interfered with the orderly progress of the trial, such findings are not mere conclusions, but are legally sufficient to support the trial court's adjudication of contempt and are final and conclusive on *habeas corpus.*"

In principle and to the same effect, see *State* v. *Zioncheck* (*State* v. *Johnson*), (1933) 171 Wash. 388 [18 Pac. (2d) 35, 23 Pac. (2d) 1118], wherein in part the court stated:

"In such a case as this, much depends upon the manner, expression and attitude of the party adjudged in contempt in addressing the court or other person in using the language held improper. A finding of contempt is not necessarily based alone upon the language used. The contempt may largely exist in the manner in which the words are spoken, and appellate courts are necessarily slow to reverse a finding of contempt by a trial court who is naturally in a much better position than is this court to determine whether or not a contempt was actually committed. In the colloquy which occurred between court and counsel almost immediately after the fine was imposed, the trial court referred to the necessity of keeping order in the courtroom, and stressing appellant's attitude toward the witness. The word 'attitude' includes more than the mere use of words, and it is evident that the court based its summary order upon something more than the language used by appellant as shown in the written record before us. In the formal order from which appellant appeals, the court found that

appellant used the language which the court found objectionable 'in a manner insulting to the witness'. . . . ''

In *State* v. *Buddress*, (1911) 63 Wash. 26 [114 Pac. 879], it was contended that the order of contempt stated ''conclusions and not facts''. In that regard, in part, the court said:

''It recites that an action was pending in court, that appellant was applying to have an order of dismissal 'signed by the court', and that, in the presence of the judge at chambers in the courthouse, the appellant used 'boisterous' and 'angry' 'language' and 'gestures', and that in the clerk's office, 'in the immediate presence' of the court, he engaged in a fight with his codefendant. . . . It is clear, also, that, while the order contains certain adjectives that are conclusions, it recites facts which are highly contumacious in a member of the bar and an officer of the court. The word 'boisterous' is defined in Webster's New International Dictionary as 'loud; stormy; noisy'. If the appellant and his codefendant used towards each other loud and angry language and gestures, and engaged in a fight in the presence of the court while the former was applying for an order, their conduct was contemptuous, and the court would have been both lacking in dignity and recreant to its duty if it had not visited summary punishment upon them.''

In accord with the foregoing authorities, it follows that the point presented by petitioner, and upon which he places principal reliance, cannot be sustained.

█ However, in effect, petitioner further contends that by the clerk's minutes of the proceedings of the trial of the action in which the court was engaged at and prior to each of the particular occasions, upon the occurrence of which the order or judgment of contempt and the commitment of petitioner depended, an insufficient showing of jurisdiction of the court was made upon which to base the order of commitment. In other words, that the minutes of the clerk constitute the order of the court; and that the purported judgment of the court, as set forth in the written order and the commitment with relation to the contempt of petitioner, is of no materiality; nor is of any validity as far as it may be considered a basis for the commitment of petitioner.

In that regard, other than a reference to sections 1003 and 1064 of the Code of Civil Procedure, which respectively and generally define an order and a judgment, no authorities are cited by petitioner in support of his contention. In 18 California Jurisprudence, page 663, it is said:

"Nor is there any provision of law which requires that all orders of a court be entered at length in its minutes, in order that they may be effective. On the contrary, except where some statute expressly or by implication provides otherwise, an order is effective from the time it is signed, or from the time it is signed and filed, notwithstanding the fact that it is not entered in the minutes. It is true that the statute makes it the duty of the county clerk to enter a synopsis of all orders proper to be entered, unless the court orders them entered at length, but this statute merely defines his duties as an officer, rather than prescribes or limits the functions or judicial powers of the court. The entry is no part of the order, but is a ministerial duty devolving upon the clerk, which may be compelled in some appropriate manner. The entry of an order only serves the purpose of fixing the time from which an appeal may be taken." (Citing appropriate authorities.)

See, also, *Von Schmidt* v. *Widber*, 99 Cal. 511 [34 Pac. 109]; *In re McKean*, 82 Cal. App. 580 [256 Pac. 226]; *Demens* v. *Huene*, 89 Cal. App. 748 [265 Pac. 389].

It follows that petitioner's point in that regard is without merit.

It is ordered that the several orders to which the writ is directed are, and each of them is, affirmed.

An application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 15, 1934.