[L. A. No. 20243. In Bank. May 3, 1948.]

LEO GALLAGHER, Petitioner, v. MUNICIPAL COURT OF THE CITY OF LOS ANGELES et al., Respondents.

Katz, Gallagher & Margolis, Charles J. Katz, A. L. Wirin, Ben Margolis, Samuel W. Blum and Nathaniel Holtzman for Petitioner.

Clore Warne, George Altman, Morris Cohn, Loren Miller and Charles Christopher, as Amici Curiae on behalf of Petitioner.

Ray L. Chesebro, City Attorney, Donald M. Redwine, Assistant City Attorney, and John L. Bland, Deputy City Attorney, for Respondents.

TRAYNOR, J.—In this proceeding in certiorari petitioner, an attorney, seeks to annul an order of the Los Angeles Municipal Court adjudging him in contempt of court and committing him to the city jail for five days. The alleged contempt occurred in open court during the course of a judicial proceeding.

The order adjudging petitioner in contempt was the culmination of an extraordinary sequence of events. In the course of a jury trial, three of the jurors complained to the trial judge that a Mrs. Hill approached them in the corridor of the courthouse and conversed with them. The judge declared a recess, stating: "The court will examine into an alleged and reported matter of interference with the jurors in this case." Mr. Allen, counsel for the defendants in the recessed trial, advised Mrs. Hill that she should be represented by counsel. Mrs. Hill told him that she wished to retain petitioner who was in the courtroom at that time. Petitioner talked to Mrs. Hill and, upon her direct request, consented to represent her.

The trial judge conducted the examination and caused the first witness to be sworn. The pertinent portions of the proceedings are as follows:

"THE COURT: Mrs. Morehouse, did someone approach you and make a remark?

Mr. Gallagher [Petitioner]: Just a minute, if the Court please. My name is Leo Gallagher and I am attorney for Mrs. Hill. I am going to object to that question as a leading question propounded by the Court to the witness.

"The Court: Mrs. Hill is not on trial. I am making an investigation, counsel.

"Mr. Gallagher: I understand that.

"The Court: You are attorney for Mrs. Hill?

"Mr. Gallagher: Yes.

"The Court: The objection is overruled."

The trial judge then questioned the witness and obtained her version of a conversation with Mrs. Hill.

"The Court: That's all.

"Mr. Gallagher: I would like to ask a question. Did you have a sign across the front of your chest indicating that you were a juror?

"The Court: I don't know that you have any place in here. I am investigating this case.

"Mr. Gallagher: You want a fair investigation, don't you?

"The Court: It is not a trial.

"Mr. Gallagher: But you want a fair investigation?

"The Court: It is not a trial.

"Mr. Gallagher: I know that, but you want a fair investigation?

"The Court: Step down, madam.

"Mr. Gallagher: Don't you want a fair investigation of this?

"The Court: Mr. Gallagher, will you please stay out of these proceedings?"

The judge nevertheless allowed Mr. Allen to question the witness before dismissing her. The second complaining juror was then sworn and examined at length by the court and Mr. Allen, after which occurred the following interchange:

"Mr. Gallagher: I would like to ask a question.

"The Court: Denied.

"Mr. Gallagher: Denied? You are not going to let me ask her a question?

"The Court: Call Mrs. Carlquist.

"Mr. Gallagher: As a friend of the Court I would like to ask a question so that you will get a full picture of what happened here.

"The Court: Denied."

The third complaining juror was next sworn and examined first by the court and then by Mr. Allen. After they finished, petitioner spoke to the court:

"MR. GALLAGHER: I would like to ask a question.

"THE COURT: Denied. Mrs. Hill will be taken by the Bailiff of this court to the District Attorney's office.

"MR. GALLAGHER: To the District Attorney's office?

"THE COURT: Yes.

"MR. GALLAGHER: For what purpose, please? Are you putting her under arrest, if the Court please? Is she under arrest? Will you kindly answer that question, Judge, whether she is under arrest at this time? Won't you hear my argument?

"THE COURT: Mr. Gallagher, you are declared in contempt of court and sentenced to five days in the City Jail. The Clerk will prepare the commitment and take Mr. Gallagher into custody."

The order of the trial judge stated: "Whereas, said statements were made by said Leo Gallagher in a loud, insolent, aggressive, belligerent, boisterous, harsh, offensive and contemptuous tone of voice and with a sneering and contemptuous expression on his face and a threatening demeanor toward said court and the judge thereof and in disobedience of the lawful orders of the court, and in a disorderly and insolent manner toward the judge of said court. That said statements and conduct of said Leo Gallagher tended to and did interrupt the due course of said trial and did obstruct the administration of justice and interfere with the orderly proceedings of the court at said time and place aforesaid, and said statements, acts and conduct did tend to and did bring the court into contempt and tended to and did interrupt its proceedings and did impair respect for said court and the judge thereof and their authority, and tended to and did breach the peace of said judicial proceedings and created a violent disturbance thereof, interfering with the due and orderly course of said trial. . . ."

According to the order of the trial judge, the alleged contempt took place while the court was "engaged in the hearing on a matter of tampering with jurors" in a case then before the court. The trial judge presumably commenced the investigation to determine whether the jury had been influenced, since it was possible that Mrs. Hill's alleged conduct would lead him to declare a mistrial. Respondent contends that Mrs. Hill was not entitled, as a matter of constitutional right,

to interrogate the witnesses through her counsel, since she was not charged with any crime and was not called as a witness. Mrs. Hill was apparently required to remain in the courtroom during the investigation. This investigation might have resulted in the filing of a complaint charging Mrs. Hill with the felony of jury tampering (Pen. Code, § 95) or with some other crime. (See Pen. Code, § 849.) It is not disputed that Mrs. Hill was entitled to advice of counsel and to the presence of her counsel in the event that she should be called as a witness or should be charged with a crime, and the fact that the hearing did not immediately result in the filing of a complaint does not alter the seriousness of her position. Indeed, she was taken to the district attorney under arrest, for some undisclosed purpose, at the conclusion of the examination.

Respondent contends, however, that despite Mrs. Hill's right to be accompanied and advised by counsel, her counsel was not authorized to cross-examine witnesses and to inject himself into the proceedings unless and until Mrs. Hill was called as a witness or charged with a public offense. It is unnecessary to hold that petitioner, as counsel for Mrs. Hill, had any such right. It is sufficient merely to state that there was no impropriety in his attempt to take part in the investigation. Mrs. Hill and petitioner had no way of knowing how the investigation might affect her rights, but they had reasonable grounds for the conclusion that she would be affected in some way.

The trial judge acted within the law and within reasonable limits of judicial discretion in denying to petitioner any participation in the inquiry that he was conducting into the matter of possible tampering with the jury. Mr. Gallagher was not an attorney representing any party in the case on trial; the fact that Mrs. Hill was named by jurors as having perhaps improperly communicated with them did not give her or her attorney a right to take part in proceedings in that case. But certainly a mere mistaken act by counsel cannot render him in contempt of court. Even if a legal proposition is untenable, counsel may properly urge it in good faith; he may do so even though he may not expect to be successful, provided of course, that he does not resort to deceit or to wilful obstruction of the orderly processes. Here the transcript indicates—and there seems to be nothing whatsoever equivocal about this—that petitioner respected the rulings of the court

and abided by them down to the point where the judge directed that "Mrs. Hill will be taken by the Bailiff of this court to the District Attorney's office."

Petitioner's participation in the investigation consisted of his attempt to cross-examine witnesses who testified that Mrs. Hill had tried to influence them while they were acting as jurors. There was nothing contemptuous in the words used by petitioner in this connection, and the record shows that the trial judge was not concerned with petitioner's manner but was determined to bar him from participation in the proceedings. The judge did not caution petitioner or even remark about petitioner's demeanor or facial expressions or tone of voice. Thus, although petitioner had no right to cross-examine witnesses in an investigation to determine whether a mistrial should be declared, petitioner cannot be held in contempt for requesting the privilege of doing so. After the judge asked petitioner to "stay out of these proceedings," petitioner directed his requests to the court and these requests were summarily denied. Until the trial judge gave his order to the bailiff, therefore, petitioner did nothing to interfere with the normal course of the investigation, and nowhere up to that point does the record show any criticism or admonition by the trial judge regarding petitioner's conduct or manner.

When Mrs. Hill was ordered taken to the district attorney's office, petitioner asked, "To the District Attorney's office? . . . For what purpose, please? Are you putting her under arrest, if the Court please? Is she under arrest? Will you kindly answer that question, Judge, whether she is under arrest at this time? Won't you hear my argument?" These were the statements that led directly to the order of contempt. When the trial judge directed that Mrs. Hill be taken by the bailiff to the district attorney's office, he changed the character of the proceedings. At that point he went beyond the bounds of conducting the trial of the case before him. That order was not material to the determination of any issue in the case; it directly affected Mrs. Hill and entitled her to be heard in person or through her counsel. Mr. Gallagher's conduct from that point on is to be appraised in relation to representation of a client under arrest and not in relation to the rulings that had been made during the inquiry that was part of or incidental to the case on trial. Mrs. Hill had a right to know the purpose of ordering her into the custody of the bailiff and, since she was represented by counsel

present at the time, her counsel was a proper person to discover it; indeed, he would clearly have been guilty of dereliction of duty to his client if he failed to do so. The trial judge, in turn, as the one who made the order of disposition, was the logical person to answer counsel's questions.

The record therefore shows that an attorney has been adjudged in contempt of court for regularly and faithfully representing the interests of his client. There is nothing contemptuous in petitioner's words and nothing in the record to show that his conduct tended to interrupt the due course of the examination. Accordingly, the question presented in this proceeding is whether the trial court's description of petitioner's facial expressions and tone of voice is sufficient to support the order of contempt, when all that appears from the record shows that petitioner addressed the court properly in the regular course of litigation. This question has been considered in several cases by the District Courts of Appeal, but with apparently conflicting results.

In re Shortridge, 5 Cal.App. 371 [90 P. 478], was a case in which an attorney was held in contempt for addressing the court while a witness was being examined, after the court had ordered him not to do so. Petitioner was discharged on habeas corpus because the District Court of Appeal decided that the recital of facts in the order was insufficient; the opinion of the court stated that the petitioner might have had the right and the duty to address the court and, in the absence of additional information, the mere fact that he did so was an insufficient ground for contempt. With respect to a statement in the contempt order that petitioner's conduct was "boisterous and offensive" the court stated that "reading this statement in connection with the context in which it occurs, it is clear that the order means no more by this than to state a conclusion from the fact that he persisted in addressing the court against the order of the court." (In re Shortridge, 5 Cal.App. 378 [90 P. 478].)

In Platnauer v. Superior Court, 32 Cal.App. 463 [163 P. 237], petitioner was counsel for the contestee in an election contest. Petitioner objected to the use of the county clerk's deputies in counting the ballots, on the ground that the clerk was prejudiced against his client. The trial judge refused to hear his argument, ordered petitioner to sit down and told petitioner's associate to conduct the case for the contestee. The associate objected to this ruling and the trial judge in-

formed him that petitioner could participate in the case but could not conduct it. When petitioner made an objection to the introduction of certain evidence immediately thereafter, he was adjudged in contempt. The trial judge stated in his order that petitioner refused to sit down; that he continued to argue with the court; that he resisted the bailiff; and that he created noise and confusion in open court by loud talking and tripping over chairs. The District Court of Appeal annulled the order on certiorari, finding that the trial judge had been arbitrary and that petitioner had used respectful language in the performance of his duty. The court stated the following rule as applicable to an attorney: "If, in discharging his duty, he happens to be persistent or vehement or both in the presentation of his points, he is still, nevertheless, within his legitimate rights as an attorney, so long as his language is not offensive or in contravention of the common rules of decorum and propriety. As well may be expected in forensic polemics, he cannot always be right, and may wholly be wrong in his position upon the legal question under argument, and to the mind of the court so plainly wrong that the latter may conceive that it requires no enlightenment from the argument of counsel. But, whether right or wrong, he has the right to an opportunity to present his theory of the case on any occasion where the exigency of the pending point in his judgment requires or justifies it." (*Platnauer* v. *Superior Court, supra,* at p. 475.)

*Curran* v. *Superior Court,* 72 Cal.App. 258 [236 P. 975], is closely analogous to the instant case. There petitioner asked a question of a witness and the district attorney objected to the form of the question. The court sustained the objection and petitioner assigned the ruling as error. The trial judge then ordered petitioner to sit down while questioning the witness. Petitioner asserted his right to stand up while questioning witnesses, and was adjudged in contempt. The trial court's order used a number of adjectives to describe petitioner's conduct: ". . . said statements above outlined were disorderly, contemptuous and insolent to the Court on your part . . . and directly tended to interrupt the proceedings of said court and to impair the respect due to the authority of said court . . . . Said statements addressed to the court were spoken in a very loud, combative and antagonistic tone of voice, and . . . said attitude and in-

tonations and loud expressions by you were disorderly, contemptuous and insulting to the Court. . . ." (*Curran* v. *Superior Court, supra,* at pp. 262-263.)

The District Court of Appeal annulled the order on certiorari. It stated that "The language used by petitioner was not in itself insulting, but was brief and directly to the point," and that the court's order was "due to a momentary forgetfulness of the rights of petitioner as an officer of the court in the discharge of his duty to his client and the public, and [the order] was not made necessary or proper by any preceding act or misconduct on the part of petitioner." (*Curran* v. *Superior Court, supra,* at pp. 265-266.) With respect to petitioner's tone of voice and manner, the court quoted with approval from the Platnauer case, and added: "While the courts in other jurisdictions have held that the tone of voice and attitude of counsel in making on proper occasions proper statements to the court may constitute contempt, yet we are reluctant to extend the rule farther than was done in the Platnauer and Shortridge cases, *supra,* and hold that the occasion and the language being proper the intonations of the voice, the vehemence of the objections or the physical attitude of counsel in making them, would alone support the conclusion of the judge that such behavior was disorderly, contemptuous, or insolent toward the court and tended to interrupt the due course of the trial, and thus subject the offender to a judgment of fine and imprisonment. The relations between court and counsel may and often do during the course of a trial become strained; mutual conditions of irritation may be created in the heat of debate, leading to tones and demeanor which in other situations would clearly manifest contempt but which, under the conditions often existing in a hotly contested criminal case, such as is indicated by the record here, should lead to no such conclusion. Much must be pardoned under the circumstances to the infirmities of human nature, and as much excused by the liberty of speech if in the heat of a trial the expressions of counsel are not always coldly precise, or his tones unmarked by excitement or even anger." (*Curran* v. *Superior Court, supra,* at 267-268. See also, *Bennett* v. *Superior Court,* 73 Cal.App.2d 203, 225 [166 P.2d 318]; *Ex parte Crenshaw,* 96 Tex. Crim. 654 [259 S.W. 587, 31 A.L.R. 1181].)

It is contended that the foregoing cases are opposed in the District Courts of Appeal by another line of authority, which

holds that the manner and tone used by an attorney may alone constitute contempt regardless of the propriety of his remarks. Although such statements can be found in the cases of *In re Hallinan,* 126 Cal.App. 121 [14 P.2d 797], and *Rose* v. *Superior Court,* 140 Cal.App. 418 [35 P.2d 605], an examination of the facts contained in those cases shows that they rest upon a different basis.

In the Hallinan case, the contempt order was occasioned by the attorney's persistent interruption of the district attorney during the latter's closing argument. Petitioner and the district attorney had stipulated that petitioner's objections would be saved for him in order to expedite the remainder of the trial. The trial judge ordered petitioner several times to refrain from interrupting the district attorney, reminding him of his stipulation. Petitioner nevertheless repeatedly disobeyed the court and was finally found in contempt. The trial judge's order recited the facts and added that petitioner's conduct, "in manner, tone and method, was disorderly, contemptuous, and that his attitude and behavior toward this Court, while the Court was holding said session, was insolent. . . ." (*In re Hallinan, supra,* at p. 125.) The District Court of Appeal stated in its opinion that petitioner's persistent interruptions contrary to the stipulation and to the orders of the trial judge constituted contempt. The court went on to state, however, that ". . . whether or not petitioner had the right to interrupt said proceedings for the purpose mentioned, it is apparent that the manner in which he conducted himself in seeking to exercise such right brought him clearly within the operation of the provisions of said section 1209 [Code Civ. Proc.], and subjected him to punishment for contempt. . . . Under all the authorities it is held that a contempt may be shown either by language or behavior, and that although the language itself may not be contemptuous, it may become so if uttered in an insolent or defiant manner; and in determining whether the language used was a contempt, regard must be had not only to the very words used but to the surrounding circumstances, the connections in which they were used, the tone, the look, the manner and the emphasis." (*In re Hallinan, supra,* at p. 128.)

In *Rose* v. *Superior Court,* 140 Cal.App. 418 [35 P.2d 605], petitioner asked questions during the empanelling of the jury that had been asked and answered many times. The

trial judge directed petitioner to refrain from repeating such questions and finally, immediately after an admonition, petitioner proceeded to repeat the same question; he did this in a sneering and loud manner, according to the order of contempt. The court again cautioned petitioner but he persisted in his manner of questioning and directed sarcastic remarks to the trial judge. When the trial judge ordered the jury to disregard certain of petitioner's remarks, the latter stated, "I demand an apology for that." One of the jurors asked the trial judge to be excused since petitioner was so rude that she did not feel that she could treat his client fairly. Petitioner continued in his behavior, however, and threatened and shouted at witnesses after still other admonitions by the trial judge. The District Court of Appeal of course refused to annul the order of contempt; but in affirming the order, the court quoted at length from *In re Hallinan* to show that petitioner's manner alone constituted contempt. (*Rose* v. *Superior Court, supra,* at pp. 425-427. See also, *Gillen* v. *Municipal Court,* 37 Cal.App.2d 428, 431 [99 P.2d 555], where the court held that petitioner's words were contemptuous in themselves but added that the trial judge correctly noted in his order the tone and manner in which the words were spoken.)

The results reached in both the Hallinan and Rose cases were undoubtedly correct. We cannot agree with the dictum contained in those cases, however, that if the words spoken were proper the order of contempt must be affirmed on the basis of a mere recital in the order that the "tone, the look, the manner and the emphasis" were contemptuous. We find greater wisdom in the reasoning of the Platnauer and Curran cases, which squarely considered the question of tone and manner and decided that if the record fails to reveal improper conduct on the part of the attorney and does reveal arbitrary or incorrect rulings by the trial judge, the order of contempt must be annulled despite the recitals in the judge's order that the attorney was boisterous or insolent. In the present case, the purported contempt is alleged to have extended over many pages of court record, yet no mention is made of it in the record. The record therefore fails to disclose a contemptuous interference by counsel with the progress of the trial.

Broadly speaking, judges are empowered to punish summarily for contempt of court in order to facilitate the orderly

administration of justice. Disobedience of court orders tends to lessen the effect of those orders; intemperate behavior in the course of a trial, as illustrated by *In re Hallinan* and *Rose* v. *Superior Court, supra,* lessens the mastery of the trial judge over the progress of the proceedings and thus tends to obstruct the course of the trial. Considerable summary power, not usually available to the officers of any other branch of the government, is therefore vested in judges. If that power is not wisely exercised it can readily become an instrument of oppression. In a summary contempt proceeding the judge who metes out the punishment is usually the injured party and the prosecutor as well. Since such a situation invites caprice, appellate courts almost without exception require that the order adjudging a person in direct contempt of court recite in detail the facts constituting the alleged transgression rather than the bare conclusions of the trial judge. (Code Civ. Proc. § 1211; see anno., 154 A.L.R. 1227.) This rule in itself demonstrates, if only by implication, that some objective support must be present to support the order of contempt. If a trial judge had only to state that the contemnor raised his voice and twisted his features, no contempt order could be attacked. The well-recognized principle that in a criminal contempt proceeding the accused is afforded many of the protections provided in regular criminal cases would be rendered meaningless. (*Wilde* v. *Superior Court,* 53 Cal.App.2d 168, 177 [127 P.2d 560]; see, Dangel on Contempt, §§ 162 et seq.); and the burden of proof would be sustained by the subjective reactions of the offended judicial officer. The vagaries of human temperament alone cast doubt upon the wisdom of applying the dictum of *In re Hallinan* to a case where the facts do not show the aggravated misconduct present in that case.

Another consideration is the fundamental interest of the public in maintaining an independent bar. Attorneys must be given a substantial freedom of expression in representing their clients. "An advocate is at liberty, when addressing the Court in regular course, to combat and contest strongly any adverse views of the Judge or Judges expressed on the case during its argument, to object to and protest against any course which the Judge may take and which the advocate thinks irregular or detrimental to the interests of his client, and to caution juries against any interference by the Judge with their functions, or with the advocate when addressing

them, or against any strong view adverse to his client expressed by the presiding Judge upon the facts of a case before the verdict of the jury thereon. An advocate ought to be allowed freedom and latitude both in speech and in the conduct of his client's case." (Oswald, Contempt of Court (3d ed.), pp. 56-57. See, *People* v. *Rongetti,* 344 Ill. 107, 122 [176 N.E. 292].) The public interest in an independent bar would be subverted if judges were allowed to punish attorneys summarily for contempt on purely subjective reactions to their conduct or statements.

An attorney has the duty to protect the interests of his client. He has a right to press legitimate argument and to protest an erroneous ruling. It is reported in Oswald on Contempt of Court that the following interchange occurred between Erskine and Buller, J.: "At length Erskine said, 'I stand here as an advocate for a brother citizen, and I desire that the word "only" be recorded;' whereupon Buller, J., said, 'Sit down, sir! remember your duty or I shall be obliged to proceed in another manner,'—to which Erskine retorted, 'Your Lordship may proceed in whatever manner you think fit. I know my duty as well as your Lordship knows yours. I shall not alter my conduct.' The Judge took no notice of this reply. Lord Campbell speaks of the conduct of Erskine as 'a noble stand for the independence of the Bar.'" (Oswald, (3d ed.), pp. 51-52.) The foregoing quotation is illustrative of the rule in the Platnauer and Curran cases, that an attorney may assert that which he believes to be correct in a forthright manner, if he is acting in the due course of a judicial proceeding. (*Matter of Rotwein,* 291 N.Y. 116, 122-123 [51 N.E.2d 669].)

We do not mean to suggest, by anything said herein, that it is impossible for an attorney to subject a judge to ridicule and insult by intonations and gestures accompanying words wholly innocuous, or that, in such event, the judge is powerless to protect the dignity of the court. We merely recognize, as anyone must, that such a thing would be most unusual, and that an attorney so skilled in the art of speech and at the same time so lacking in an understanding of his obligations, could be curbed by first warning him of his misconduct, and, if he persisted, by disciplinary action. In the present case, however, petitioner was never warned that his tone of voice was "loud, insolent, aggressive, belligerent, boisterous, harsh, offensive and contemptuous" or that there

was a "sneering and contemptuous expression" on his face. The record does not show that the trial judge rebuked him for his alleged "threatening demeanor" or his "disorderly and insolent manner." The only warning to petitioner was to refrain from participation in the investigation; it was when petitioner endeavored to discover whether his client was under arrest that he was declared to be in contempt. Nor does the record reveal that petitioner disobeyed the lawful orders of the court. After he was told to "stay out of these proceedings" he asked no questions of the witness. He thereafter requested the court to be heard. The trial judge did not censure him for these requests, but promptly denied them. His final request for information regarding the arrest of his client, which resulted in the order of contempt, was not in disobedience of any lawful order of the court.

The record shows, therefore, only that an attorney was persistent in his efforts to determine what was to be done with his client, who was being escorted to the district attorney, presumably under arrest. The heat of courtroom debate, particularly where liberty is concerned, often gives rise to persistence on the part of counsel. If the words used by counsel are respectful and pertinent to the matter before the court, it is not unnecessarily burdensome to require the judge first to warn the attorney that his tone and facial expressions are offensive and tend to interrupt the due course of the proceeding. Otherwise, attorneys could be subjected to fines and jail sentences because of personal annoyance and pique on the part of trial judges; and these penalties could be rendered unassailable, as is contended here, by lengthy recitals in the orders of contempt respecting the demeanor of the contemner. There is nothing in the reported decisions or in the experience of our courts that makes necessary such an extraordinary authority on the part of the trial judge. Indeed, the recognition of such an authority would involve the surrender of a substantial amount of the independence of the bar, and in many instances would deprive litigants of a fair hearing.

The order adjudging petitioner in contempt is annulled.

Gibson, C. J., Carter, J., and Schauer, J., concurred.

SHENK, J.—I dissent.

This case comes directly within the rule of the cases (*In re Hallinan*, 126 Cal.App. 121 [14 P.2d 797]; *Rose* v. *Superior*

*Court,* 140 Cal.App. 418 [35 P.2d 605] ) which the majority opinion refuses to follow but seeks to distinguish for insufficient reasons. By disapproving the general doctrine followed in those cases the majority opinion has upset the settled rule concerning the scope of inquiry in a certiorari proceeding to review an order of contempt.

For the purpose of determining the lawful exercise of jurisdiction in a summary contempt proceeding the recitals of the facts in the order of commitment must be deemed to be true. There is no procedure for the taking of evidence to contradict the facts so recited. This the majority opinion implicitly concedes; and it is not questioned that the recitals of the attorney's tone, manner and attitude, being matters within the observation of the court, are findings of fact. (*Rose* v. *Superior Court, supra,* 140 Cal.App. at 426; *Gillen* v. *Municipal Court,* 37 Cal.App.2d 428, 431 [99 P.2d 555], with citation of *In re Hallinan, supra.*)

A court is the judge of its own contempts, its judgment is subject to review only on the question of jurisdiction, and the judgment of contempt is valid if the recital of facts therein shows acts which come within the legal definition of a direct contempt. (*Otis* v. *Superior Court,* 148 Cal. 129 [82 P. 853]; *In re Hallinan, supra.*) As said in *Ex Parte Terry,* 128 U.S. 289 [9 S.Ct. 77, 32 L.Ed. 405], whether the attorney's conduct justified the punishment was for the court to determine under its responsibility to do justice and to maintain its own authority, and its findings upon the facts are conclusive.

The foregoing rules are of long standing and are sound guiding principles for both trial and appellate courts in order to maintain the balance between the required respect for judicial authority and the asserted necessity for an independent bar. Abrogation thereof would destroy the functional power of the court.

It is now held by the majority that the requirement for the jurisdictional recital of facts in the contempt order is not complied with merely by stating in the order that the words uttered by the attorney were "in a loud, insolent, aggressive, belligerent, boisterous, harsh, offensive and contemptuous tone of voice and with a sneering and contemptuous expression on his face and a threatening demeanor toward" the court and the judge, and "in a disorderly and insolent manner," followed by the conclusion that such manner and conduct tended to and did interrupt the due course of the trial and interfered

with the orderly proceedings of the court. It should not be required, as it would now seem to be, that the court have a sound-recording device and a motion picture camera in effectual operation at all times in the courtroom in order to make a record in the trial or proceeding of the insolent tone of voice and the offensive nature of the conduct of the attorney, including his facial expressions, before its recital of the facts may be taken as true and be sufficient to show that its order was not arbitrary or in excess of jurisdiction. The majority opinion does not question that the constant interruptions and disobedience of the court's rulings, in respectful words but in the manner and with the intemperate tones and attitudes which tend to interfere with the due course of the proceeding would constitute contempt. However, before the court may commit the contemner it is required that the facts so found must also be shown by the record of the proceedings, that is, by appropriate admonitions and warnings regarding the attorney's tone and manner. In other words, a record of repetition of rulings and admonitions to obey, the continued disobedience on the part of the attorney, together with the findings of other matters of tone, expression, and conduct within the court's observation, no longer support the exercise of jurisdiction to declare a direct contempt.

Section 1209 of the Code of Civil Procedure provides: ''The following acts or omissions in respect to a court of justice, or proceedings therein, are contempts of the authority of the court: 1. Disorderly, contemptuous, or insolent behavior toward the judge while holding court, tending to interrupt the due course of a trial or other judicial proceeding; 2. . . . boisterous conduct . . . tending to interrupt the due course of a trial or other judicial proceeding; . . .'' The law thus imposes upon the judicial officer the duty to see that court proceedings are conducted in an orderly manner. Confidence must be reposed somewhere in the matter of upholding the authority and integrity of the courts as a forum for the orderly settlement of disputes. And indeed it will come as a surprise to those charged with the orderly conduct of judicial proceedings that credence will not be accorded the recital of matters within their observation and which cannot always conveniently be reflected by the record of the trial or proceeding. In my opinion the line has correctly been drawn by the prior decisions of our appellate courts. The additional element now required before jurisdiction attaches to declare

contemptuous an attorney's persistent offensive or intemperate tone or manner is a burden for which there is no authority beyond the majority's *ipsi dixit*.

Furthermore, the proceeding in progress in the respondent court was unquestionably a proper inquiry for the purpose of determining whether the minds of the particular jurors approached by Mrs. Hill had become prejudiced so that the trial should not proceed. The court correctly announced that Mrs. Hill was not on trial. In that proceeding the court had no power to mete out punishment to Mrs. Hill, nor was it sitting as a committing magistrate. Her attorney had no proper place in the proceeding unless Mrs. Hill was called to the witness stand, which she was not, in which event he might then counsel her concerning her rights and make appropriate objections. In fact, the majority opinion concedes that the trial court correctly ruled that Mrs. Hill and her attorney had no right to participate in the proceeding. There was no ruling or order of the court which might be said to have changed the nature of the investigation. The cases followed in the majority opinion (*Curran* v. *Superior Court*, 72 Cal. App. 258 [236 P. 975]; *Platnauer* v. *Superior Court*, 32 Cal. App. 463 [163 P. 237]; and *In re Shortridge*, 5 Cal.App. 371 [90 P. 478]) from all that appeared in the order or the record, involved the persistence of an attorney in advocating a point which he had a right to make in a trial where he had the right and the duty to be. The present case involves the officious and persistent disobedience of an order excluding the attorney from participation in a proceeding where he had no right and where interference would becloud the issue and unnecessarily prolong the investigation.

It is but to cavil with the facts to state that the only foundation for the contempt order was the incident which occurred after the judge ordered Mrs. Hill to be taken to the district attorney. The petitioner's remarks at that time were but the culmination of his persistent and officious conduct from which he had been properly advised by the court to refrain. On this view of the record it is unnecessary to consider whether the words uttered by the petitioner were in themselves disrespectful or whether, as a separate question, the findings that they were loud, boisterous, contemptuous, sneering, etc., were alone sufficient to constitute a contempt. Where the basic conduct of the attorney is improper, and is persisted in against the repeated admonitions and orders of

the court, we have a situation which is ruled by the Hallinan, Rose and other cases attempted to be distinguished, and the offensiveness of manner thereupon becomes merely cumulative.

In my opinion the order should be affirmed.

Edmonds, J., and Spence, J., concurred.