[Civ. No. 1600.   Third Appellate District.—January 3, 1917.]

# R. PLATNAUER, Petitioner, v. SUPERIOR COURT OF SACRAMENTO COUNTY et al., Respondents.

CONTEMPT OF COURT—ATTEMPT OF ATTORNEY AT LAW TO PARTICIPATE IN TRIAL — CONDUCT NOT CONTEMPTUOUS — ANNULMENT OF JUDGMENT ON CERTIORARI.—An order adjudging a duly licensed attorney at law guilty of contempt of court for persistently attempting to take part in the proceedings of an election contest on behalf of the person by whom he was regularly employed, after the court had ordered that he should not further participate therein, is in excess of the jurisdiction of the court, and subject to annulment on *certiorari.*

APPLICATION for a Writ of Certiorari originally made to the District Court of Appeal for the Third Appellate District to annul an order adjudging the petitioner guilty of contempt of court.

The facts are stated in the opinion of the court.

A. M. Seymour, J. S. Daly, and R. Platnauer, for Petitioner.

Meredith, Landis & Chester, for Respondents.

HART, J.—The petitioner was, by the respondents, adjudged guilty of contempt of court, and ordered to suffer punishment therefor by imprisonment in the county jail of the county of Sacramento for the period of one day. Claiming that, in so adjudging him guilty of contempt and so punishing him therefor, the court exceeded its jurisdiction, the petitioner, by this proceeding, asks this court for a writ of

*certiorari,* to the end that the action of the court in that regard may be annulled and set aside as being absolutely void.

The alleged contempt occurred during the progress of the trial of the case entitled J. M. Morrison, Contestant, *v.* William D. Lawton and C. E. Mahoney, Contestees and Respondents. Said proceeding involved and was instituted to contest the question of the nomination of the said C. E. Mahoney, at the general primary election held throughout the state in the month of August, 1916, for the office of supervisor for the third supervisorial district of Sacramento County, and to that end to obtain a recount of the votes cast at said primary election in said district for said office, the three persons named having been rival candidates for the nomination for said office at the time mentioned.

For a clear understanding of the proceedings culminating in the order or judgment adjudging the petitioner guilty of contempt, it is necessary to explain that the contestant, J. M. Morrison, was, at the time of his candidacy for supervisor, as well as at the time of the hearing of the contest, a deputy in the office of the county clerk, and that petitioner was one of the attorneys representing in said contest the contestee, C. E. Mahoney.

It appears from the record before us—in fact, it is shown by both the petition for and the return to the writ—that, preliminarily to the inspection of the ballots cast at the election for the parties, the petitioner, representing the contestee, declared his intention of attempting to show, in support of his objection to the proposition made by the contestant that the clerks to be appointed by the court to keep the tallies in the proceeding be furnished by the county clerk from the clerical force of his office, that the county clerk was biased and prejudiced against the contestee; that, therefore, the clerks to be appointed by the court to assist in the counting of the ballots should not be taken from among the deputies of the county clerk. The subjoined is, however, the court stenographer's report of the discussion of this matter, and of all other proceedings leading to the commitment, and it is conceived that a clearer understanding of the situation may be obtained from a reproduction herein of the full report:

"Mr. Platnauer: I will ask the court to direct the contestant to deposit such an amount in advance as the court shall fix for compensation and for the assistance of the court in making

the canvass. I will read the section of the statute, which is section 28 of the Primary Election Law that provides for a recount. (Reading section.)

"The Court: What act is that?

"Mr. Platnauer: It is the primary election law of 1913.

"Mr. Meredith: There is no objection to that. The law is clear.

"The Court: Not the act that is held up by the referendum?

"Mr. Platnauer: No, this is the act of 1913.

"Mr. Meredith: Before your Honor fixes the number of persons it may be the county clerk can supply us the sufficient deputies from his own office—the persons are only such as the court may need to facilitate the counting. I would like to ascertain from the county clerk if he can furnish regular deputies from his office—

"Mr. Platnauer: If the court please, I object that the county clerk is disqualified from appointing for various reasons—it is obvious—your Honor may know—one of them is that the contestant himself is a deputy.

"The Court: Of course, the contestant himself will not be qualified.

"Mr. Platnauer: I understand. We charge that the county clerk is biased and prejudiced.

"The Court: The court will ask the clerk if he has sufficient deputies to act as tally clerks—two will be required.

"Mr. Meredith: Mr. Pfund, can you supply the court with two of your deputies—disinterested—to represent the court in this recount?

"County Clerk Pfund: I can supply two or I can supply three.

"The Court: Two will be sufficient.

"Mr. Platnauer: If the court desires to hear—we desire to be heard on the question of the bias and prejudice of the county clerk.

"The Court: I do not care to hear you, Mr. Platnauer.

"Mr. Meredith (to Mr. Pfund): Will you designate two deputies.

"The Court: Mr. Platnauer, you have changed your position from a year ago.

"Mr. Platnauer: A year ago—

"The Court: At that time you absolutely refused to put up your share of the costs in a proceeding similar to this kind,

and insisted that you had the right to the county clerk's deputies to act as tally-clerks.

"Mr. Platnauer: In the first place, that was not a procedure similar to this; it was a general election contest; in the next place, there was no charge that the county clerk was biased and prejudiced against any of the litigants.

"The Court: This is not a trial charging the county clerk with prejudice and bias.

"Mr. Platnauer: I understand—

"The Court: Your motion will be denied. The county clerk will furnish two deputies.

"Mr. Platnauer: In this kind of a trial—this question of the county clerk—simply to present testimony when we claim the county clerk is biased and prejudiced.

"The Court: Sit down, I have ruled on that.

"Mr. Platnauer: Will you permit me to address the court?

"The Court: Sit down. Mr. Sheriff, set him down. I am not going to be continually listening to you—you will sit down. Sit him down. You refused to obey the order of the court. The court will now order that you be restrained— the court will not permit you to further participate in the trial of this action, you are getting to be a nuisance around here. You refused to obey the order of the court. We want to go ahead here and proceed with this count. When the court orders you to sit down, you should obey it.

"Mr. Platnauer: If the court will permit me to address the court.

"The Court: I don't care to hear you any further. I will not permit you to address the court. Sit down, when I tell you to sit down—if not, the court will order you committed to jail, that is all, until you obey the order of the court. Mr. Seymour, go on and proceed with the conduct of the case. I don't care to hear from you any more at all.

"Mr. Meredith: I presume the court is familiar with the nature of this recount. It is for a recount of the third supervisorial district. The county clerk suggests Mr. H. W. Hall and Mr. Gleason, both deputies in his office.

"The Court: Very well, I will name Mr. Hall and Mr. Gleason—Mr. Gleason and Mr. Hall.

"Mr. Meredith: I was going to suggest to counsel on the other side, would there be any objection to the integrity of the ballots?

"Mr. Platnauer: We cannot agree, you make your proof—I insist you make your proof.

"Mr. Meredith: We ask the court to make an order—it seems to be necessary—for the county clerk to produce the ballots in their original condition before this court, of the third supervisorial district.

"Mr. Seymour: In this connection, I suggest that the court view the vault.

"The Court: Yes. I will now order that E. F. Pfund, county clerk for the county of Sacramento, forthwith, upon the service upon him of this order, break the seal of the vault in which the ballots of said August Primary, of August 29, 1916, are contained, and after opening the said vault, forthwith produce, in open court, in Department Three thereof, the sealed envelopes containing the ballots cast in such precinct—that is precinct No. 17 to 30 and 43 to 60 and 94 to 109, and 123 to 137, inclusive, in such manner and at such time as the court may order.

"Mr. Seymour: May it please the court, I suggest your Honor view the vault.

"The Court: When the count begins, the ballots will be placed on the bar and counsel, one counsel for contestant and one for contestee—

"Mr. Seymour: We can arrange that, after we get them.

"Mr. Meredith: Will the court inspect the vault at the present time?

"The Court: Yes, I will go down.

"(The court left the courtroom and, returning into the court, the following occurred:)

"The Court: Counsel for contestant may take a position on my left and counsel for contestee on the right. The ballots will be placed here—

"Mr. Seymour: May it please the court, Mr. Morris is to act in the capacity of clerk for Mr. Mahoney.

"The Court: If there is room, there is no objection. Are you ready to proceed, Mr. Meredith? Have you any particular precinct?

"Mr. Meredith: We would like to start in with precinct 30.

"The Court: I suggest counsel take their places and the ballots be placed on the bar of the court.

"Mr. Meredith: We are ready.

"The Court: When the ballot of a precinct is called for, place it up here. Counsel will take their places. When the ballots are placed on the bar, then they may examine them. Hand it up here, Mr. Clerk.

"The Court (to Mr. Seymour) : You will conduct this case. That is the order of the court. Mr. Platnauer, he can stand here at your side; if he wants to make any suggestion to you —I am going to proceed with this case, conduct it in an orderly manner; I am going to proceed with it. I want the work of the court to be facilitated as much as possible. Mr. Platnauer can stand to your side and render you any assistance he desires.

"Mr. Seymour: With all respect to the court, I desire to enter a protest and exception to the order of the court. Mr. Platnauer is the leading counsel in the case. I submit he ought not to be deprived of participating in the case.

"The Court: He may participate in the case, but you are to conduct the case, Mr. Seymour. He may render such assistance to you as he sees fit.

"(At this point envelope No. 109 was placed on the bar by the judge.)

"Mr. Platnauer: There is no evidence the ballots are in the same condition.

"The Court: Mr. Platnauer, sit down. Mr. Seymour is to conduct this case.

"Mr. Platnauer: I am employed to represent—

"The Court: Mr. Platnauer, your conduct is unbecoming to the court. The court adjudges you guilty of contempt of court—

"Mr. Platnauer: I do not see, your honor, unbecoming in addressing the court on behalf of a client.

"The Court: I am not going to be bothered with you any longer.

"Mr. Platnauer: I presume you don't want me in the case?

"The Court: The court adjudges you guilty of contempt of court; guilty of a misdemeanor in that you have been guilty of disorderly, contemptuous and insolent behavior during the sitting of this court in the immediate view and presence of the court, directly tending to interrupt the proceedings and impairing the respect due this court, and adjudges you to be committed to the county jail for the period of one day in punishment thereof.

"Mr. Platnauer: Might I ask which conduct—addressing the court?

"The Court: You refused to obey the order of the court. The court will direct the clerk to issue a commitment.

"Mr. Seymour: May it please the court, I desire to protest against this action. It deprives the respondent of the aid and advice of counsel—of his chief counsel—in the case; I submit at the time of the adjudging Mr. Platnauer guilty of contempt, he was proceeding to address the court in a respectful manner, in accordance with the respect due the court, within his right as an attorney for the respondent, and I submit—

"The Court: Let the clerk issue the commitment.

"Mr. Seymour: I submit that no contempt was committed by him. I submit further that the respondent has the right, the legal right to the services and advice of his counsel, of Mr. Platnauer, in this case, and now to commit him to jail for the period of one day would be an invasion of the constitutional right of the respondent; is unwarranted, either in fact, or in law.

"The Court: The court directs the clerk to issue the commitment.

"Mr. Seymour: In view of the fact Mr. Platnauer has been committed to jail for a period of one day, I ask that further proceedings in this case be suspended until such time as he shall have served his sentence, in order that the respondent may have the advantage of his advice, of his presence, and his co-operation in this case.

"Mr. Meredith: We object to that.

"The Court: The request will be denied."

Thereafter the court caused to be entered in the proper records of the court, a judgment in which it was recited that the petitioner insisted on arguing matters to the court after he was told by the court that the latter did not care to hear further argument and directed him to sit down; that petitioner refused to sit down, said he would not sit down and continued to argue to the court; that thereupon the court ordered the bailiff of said court to seat him; that petitioner resisted the bailiff, and made loud noises and confusion in open court by loud talking and tripping over chairs; that, after order was restored, the court notified petitioner that it would not hear from him further, but that any matter to be presented to the court on behalf of respondents (contestees)

should be presented by attorney A. M. Seymour; that petitioner continued to argue, and was again directed by the court to sit down, and he refused to do so and stated that the court desired to prevent him from appearing in court.    Following the facts thus briefly recited is the judgment.

The point first made by petitioner is that the oral judgment pronounced by the court is the final and, indeed, the only judgment adjudging him guilty of contempt, and that the purported judgment subsequently entered in the minutes of the court is not the judgment pronounced from the bench, and is wholly different therefrom.    The argument following from this postulate is that this court, in passing upon the question whether the respondents exceeded their jurisdiction in adjudging the petitioner guilty of contempt, is required to look solely to the judgment pronounced orally from the bench, and to measure the authority of the respondents to pronounce such judgment accordingly; that the judgment so pronounced must be held to be void because it does not contain within its recitals a statement of the facts constituting the alleged contempt.

It is manifestly true, as the petitioner contends, that the judgment entered is not the judgment rendered in the case unless it is the judgment which has been considered and ordered, or, in other words, unless it be supported in all vital essentials by the previous order of the court, or the judgment actually rendered and ordered in the first instance, the *rendition* being the judicial act and the *entry* merely ministerial. (Freeman on Judgments, sec. 38, p. 43; *Peck* v. *Courtis,* 31 Cal. 207, 209; *Genella* v. *Relyea,* 32 Cal. 159; *Los Angeles County Bank* v. *Raynor,* 61 Cal. 145, 147; *Ex parte Raye,* 63 Cal. 491; *Estate of Cook,* 77 Cal. 220, 226, 227, [11 Am. St. Rep. 267, 1 L. R. A. 567, 17 Pac 923, 19 Pac 431]; *Schuster* v. *Rader,* 13 Colo. 329, [22 Pac. 505, 506].)    But, in view of the fact that the facts upon which the respondents acted in adjudging the petitioner guilty of contempt are certified in full to this court, and, therefore, are a part of the record before us, it is conceived to be unnecessary to consider that question here, since the facts speak for themselves, and much more readily than the judgment itself remove any difficulty which otherwise might be encountered in determining whether the respondents remained clearly within their jurisdictional sphere when they adjudged the petitioner guilty of contempt.

That the facts upon which the court predicated its judgment against the petitioner may, upon *certiorari*, when they are duly certified to the court from which relief through that writ is sought, be reviewed and accepted as against the judgment of contempt, with which they do not agree, and upon them the proceeding in contempt be annulled and set aside, if such a course be thereby legally warranted, is well settled. (*Batchelder* v. *Moore*, 42 Cal. 412; *Los Angeles* v. *Young*, 118 Cal. 295, [62 Am. St. Rep. 234, 50 Pac. 534]; *McClatchy* v. *Superior Court*, 119 Cal. 413, [39 L. R. A. 691, 51 Pac. 696].) This proposition is the essential corollary of the definitely settled rule that mere presumptions and intendments are not, as is true with respect to ordinary judgments, or perhaps to proceedings upon *habeas corpus*, to be indulged in support of judgments in contempt. In *Los Angeles* v. *Young, supra*, it is said that, while "it may be set down as a universal rule that, as the writ of *certiorari* is to review a record of an inferior court, board, or tribunal, and to determine from the record whether such court . . . has exceeded its jurisdiction, evidence *dehors* the record, and contradicting it is never permitted," yet, "upon *certiorari*, if it becomes necessary for the court of review to be put in possession of *the facts upon which the court acted*, and which are not technically of record, it is competent for that court to require the lower court to certify such facts in its return to the writ, and this statement of facts would then be a part of the record." (See, also, 2 Spelling on Extraordinary Relief, sec. 2020.)

The question, then, is: Do the facts show contemptuous conduct on the part of the petitioner? In this connection, it is first proper to state that, before this court in this proceeding, oral testimony was received for the purpose of showing the manner or personal attitude assumed by the petitioner when the court ordered the deputy sheriff to force him to his seat, and particularly when that official attempted to execute the court's order. Some of the witnesses testified that the petitioner violently resisted the attempt of the officer to force him to be seated, while others testified that the petitioner merely placed his hands in his pockets and planted his feet firmly upon the floor and adjusted his body in a position of rigidity, apparently for the purpose of enabling him the more readily to successfully resist being forced to his seat. But

we may with propriety forego consideration of this testimony, or the particular episode to which it relates; for, since the fact is that the court passed it without notice, it may be assumed that the court either condoned the conduct then of the petitioner, or regarded it as insufficient to stand as a predicate for a judgment of contempt. In this connection, it is to be observed from the facts above set forth, that when, in the first instance, the court stated that he did not care to hear further from the petitioner upon the point then *sub judice,* the latter appears to have ceased addressing the court, and that nothing further occurred between the court and the petitioner until the court gratuitously and unnecessarily suggested to the petitioner that his position on the pending question was wholly different from his position on what the court conceived to be a precisely similar legal question arising in an election contest in the superior court of Sacramento County several years previously. Perhaps the matter would have ended peacefully but for this untimely and wholly irrelevant suggestion by the court. But, however that may be, the court, as above stated, did pass the incident unheeded and so treated it as closed, so far as taking direct action upon it was concerned, and took no action against the petitioner until he attempted, against the previous direction of the court, to take an active part in the trial. It follows, then, that the whole controversy here reduces itself down to the single and simple question whether it is within the lawful power of a court to deny and foreclose the right of a regularly licensed attorney, regularly employed by a litigant to represent him in the trial of a case, to participate in such trial, even though such attorney might at some time in the progress of the trial of the cause have been guilty of contumacious conduct, and to punish him as for contempt of court if he attempts actively to represent his client in the trial.

The facts, briefly recapitulated, are: The trial of the contest was immediately resumed after the close of the incident above referred to, court and counsel repaired to the clerk's office to inspect the vault in which the ballots were kept by the county clerk, and, after such inspection, court and counsel returned to the courtroom. At this time the court announced that Mr. Seymour, of counsel for contestee, would be required to conduct the trial on behalf of the latter, and that the petitioner would be permitted to take no part therein,

except in so far as he might desire or conceive it necessary to advise with his associate, Mr. Seymour. And when the petitioner, in a respectful manner, interposed an objection to the consideration of one of the ballots, the court interrupted, saying: "Mr. Platnauer, sit down. Mr. Seymour is to conduct this case"; whereupon the petitioner was about to say that he was employed to represent the contestee, when the court adjudged him guilty of contempt.

It is thus to be observed that, as above stated, the facts show, if the commitment does not, that the gist of the offending by the petitioner, and for which specific conduct the court adjudged him guilty of contempt, was in attempting to take part in the trial of the pending cause in behalf of his client.

Every court has the right to protect its dignity by compelling litigants and attorneys appearing before it to conduct themselves with decorum and in a respectful manner and the proceedings of a trial in an orderly way. With this right necessarily attends the power to coerce decorum and decent conduct on the part of the parties and their counsel, and to compel them to demean themselves in a manner befitting the dignity of courts of justice. And the power should on all *proper occasions* be unsparingly exercised and applied, to the end that the courts, which represent in the highest form the majesty of the law, shall be accorded that respect to which the sacredness of their functions and their high dignity entitle them. The members of the legal profession should, above all other members of society, be the first to uphold the dignity of judicial tribunals and to protect them against falling into that disrepute to which they would be hastened if proceedings before them were conducted without order or decorum, or the respect due the ministers of the law for the law's sake. Indeed, such is among the first and most important of the obligations to which the lawyer under his oath solemnly subscribes when he is granted the right to practice his profession, and to him, no less than to the magistrate, is looked for the maintenance and preservation at all times of the honor, integrity, and dignity of the courts of which his right to practice therein makes him an officer. If he fails in his duty in this regard, he falls short of measuring up to the calls of his high and honorable profession, and the requirements of the obligations of his oath of office. Not only this, but thus he impairs the dignity of the profession and

himself loses that respect and that confidence of the public which are among the most valuable and fruitful of his assets as a practicing lawyer. And even if it happens that, for some reason wholly personal to himself, he dislikes the presiding judge as an individual, he is no less in duty and honor bound to be uniformly respectful to the court, and to do no act that will impair or degrade its honor and dignity in the estimation of the public. The attorney who does not understand this to be his duty, or, understanding it, fails to practice it, should surrender his license and so relinquish his granted right further to pursue the profession —a profession whose immutable and exalted and, indeed, well-understood ideals he promised, as one of the conditions upon which he was admitted into it, to exemplify in all his professional engagements. But no court, in this state at least, has the right or possesses the lawful power of arbitrarily or capriciously forcing a licensed attorney, regularly employed to represent a litigant in the trial of a case, to retire from active participation in such trial. Such judicial action cannot be justified on the ground that it is intended to operate as a punishment for contumacious conduct on the part of the attorney. No such power either inheres in our courts or exists by virtue of legislative fiat. If it did, a litigant could be arbitrarily deprived of the right to the services of an attorney of his own choosing. Besides, such power in any court would, when exercised, have the effect of qualifying or limiting the rights which a citizen acquires by virtue of his license to practice law. In the present case, if the petitioner had been the lone legal representative of the contestee, the latter, under the order of the court denying the petitioner the right to take an active part in the trial, would have been compelled to employ other counsel, with the inconvenience and trouble incident thereto, or have proceeded with the trial unaided by the skill of a lawyer.

A lawyer, when engaged in the trial of a case, is not only vested with the right, but, under his oath as such officer of the court, is charged with the duty of safeguarding the interests of his client in the trial of an issue involving such interests. For this purpose, in a trial, it is his sworn duty, when the cause requires it, to offer testimony in behalf of his client or in support of his case in accordance with his theory of the case, to object to testimony offered by his adversary, to inter-

rogate witnesses, and to present and argue to the court his objections or points touching the legal propriety or impropriety of the testimony or of particular questions propounded to the witnesses. If, in discharging this duty, he happens to be persistent or vehement or both in the presentation of his points, he is still, nevertheless, within his legitimate rights as an attorney, so long as his language is not offensive or in contravention of the common rules of decorum and propriety. As well may be expected in forensic polemics, he cannot always be right, and may wholly be wrong in his position upon the legal question under argument, and to the mind of the court so plainly wrong that the latter may conceive that it requires no enlightenment from the argument of counsel. But, whether right or wrong, he has the right to an opportunity to present his theory of the case on any occasion where the exigency of the pending point in his judgment requires or justifies it.

It does not appear from the facts as they are here disclosed that the petitioner at any time addressed the court in disrespectful language. On the contrary, he appears to have proceeded with full consciousness of the duty which an attorney owes to a court, and, when adjudged guilty of contempt, had merely interposed a suggestion in respectful language as to the absence of a showing that the ballots were in the same condition in which they had been received. He was within his rights as an attorney when making this suggestion and in objecting to their consideration until such a showing had been made, even though the objection might have been legally untenable and, as a matter of fact, without foundation, which latter proposition was probably true. But the court appears to have been relentlessly insistent on compliance with its order that the petitioner should not take any active part in the trial of the case or, under any circumstances, address the court; and, as declared, it was alone the persistency of the petitioner to be heard in behalf of his client, of whom he was the senior counsel, which brought forth the judgment and commitment for contempt. In other words, the alleged contemptuous conduct on the part of the petitioner appears to have consisted entirely in the petitioner's attempt to take part in the pending proceedings after the court had ordered that he should not further participate therein. As above indicated, our conclusion is that in so acting the court transcended

its lawful authority, and that the order was wholly beyond the jurisdiction of the court and is, therefore, void.

It follows that the judgment adjudging the petitioner guilty of contempt must be annulled, set aside, and vacated, and it is so ordered.

Chipman, P. J., and Burnett, J., concurred.